IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTOPHER TYLER LONG,
CHRISTOPHER EMMETT LONG, AND
EDY LONG,

        Plaintiffs

v.                                              Civil No.3:13-cv-65

M&M TRANSPORTATION, LLC; MILLER &
SONS AUTO AND TRUCK REPAIR, INC.;
KEVIN E. MILLER; KENNETH ANDREW
MILLER, JR.; AND PEGGY MILLER,

        Defendants.

**ORDER CONFIRMING PRONOUNCED ORDER OF THE COURT GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES AND GRANTING DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUBMIT TO RULE 35 EXAMINATIONS**

**I. INTRODUCTION**

        These matters are before the Court on Plaintiffs' Motion to Compel Defendants' Discovery Responses filed on January 10, 2014,[1] and Defendants' Motion to Compel Plaintiff to Submit to Rule 35 Examinations filed on January 14, 2014.[2] Defendants' filed responses to Plaintiffs' Motion on January 17, 2014,[3] and Plaintiffs filed a response to Defendants' Motion on January 20, 2014.[4] On January 21, 2014, this Court held an evidentiary hearing and argument on both motions.

---

[1] Dkt. No. 50.

[2] Dkt. No. 51.

[3] Dkt. Nos. 56 & 57.

[4] Dkt. No. 58.

1

Plaintiffs appeared by Christopher J. Regan, Esq. and Laura Pollard, Esq., in person. Defendant appeared by Stephen M. Houghton, Esq., in person, and Tracey A. Rohrbaugh, Esq., by telephone. Defendants offered two exhibits into evidence. No other evidence or testimony was presented at the hearing. At the conclusion of the hearing, the Court granted in part Plaintiffs' Motion to Compel and granted Defendants' Motion to Compel.

## II. DISCUSSION

### A. Plaintiffs' Motion to Compel Discovery Responses

Plaintiffs propounded on Defendants seven interrogatories and twelve requests for production of documents, all of which seek financial information and records. Defendants responded as follows to each of the discovery requests:

> Plaintiffs' discovery request is premature because Plaintiffs have offered no evidence to demonstrate a viable claim for punitive damages, and Defendant is not required to produce such financial information until after the dispositive motions are adjudicated.

In their Motion to Compel, Plaintiffs argue that they are only required to make a *prima facie* case for punitive damages in order to discover financial information and that survival of dispositive motions is but one means by which a plaintiff may establish such a *prima facie* case. Plaintiffs further contend that they have asserted sufficient facts in their Complaint to show a viable claim for punitive damages such that they are entitled to the discovery of the requested financial information. Specifically, they assert that they have sufficiently established *prima facie* claims for the tort of outrage and statutory deliberate intent, both of which allow recovery of punitive damages. In addition, Plaintiffs contend that Defendants' financial information is relevant to several other issues in this action, such as Defendants' corporate structures and whether veil-piercing is available in this case.

2

In their response to Plaintiffs' Motion to Compel, Defendants contend that their objections to Plaintiffs' requests for financial information are valid. They argue that "information related to punitive damages is discoverable [only] when it is clear that the principal liability for which a party might recover punitive damages will be presented to the jury." Defendants point out that Defendants' Motion for Partial Judgment on the Pleadings[5] is currently pending before the Court. Defendants argue that this Motion seeks dismissal of many of the claims for which the requested financial information would be relevant; therefore, Plaintiffs' discovery of that information is premature until the Court rules as to whether Plaintiffs may continue to pursue those claims. They also argue that Plaintiffs failed to present any evidence in support of their factual allegations as to the outrage and deliberate intent claims, so they have not met their burden of establishing a viable claim for punitive damages.

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). A defendant's financial information is clearly relevant if the defendant is potentially liable for punitive damages. *See Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir.2004); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C.1993). However, many courts require a heightened showing of entitlement to financial records to support a punitive damage claim because "[t]he ease with which claims for punitive damages can be asserted makes it apparent that such claims may result in abuse and harassment if their mere assertion entitles plaintiffs to financial discovery." *Moore v. DAN Holdings, Inc.*, 2013 WL 1833557 (M.D.N.C. April 30, 2013) (quoting *Moran v. International Playtex, Inc.*, 103 A.D.2d 375, 377 (N.Y.App. Div., 2d Dep't 1984)). Thus,

---

[5]Dkt. No. 30.

3

in general, a plaintiff must establish that a claim for punitive damages is viable before discovery into a defendant's financial information will be allowed. *See Robinson v. Quicken Loans Inc.*, 2013 WL 1704839 (S.D.W.V. April 19, 2013) (collecting cases).

This *prima facie* showing of viability can be made by presenting evidence to support the factual allegations in the complaint or by surviving a summary judgment motion as to claims for which punitive damages are available. *See, e.g., George Golf Design, Inc. v. Greenbrier Hotel, Inc.,* 2012 WL 5285410, at *3 (S.D.W.Va. Oct. 23, 2012) (information about defendant's financial worth only discoverable once plaintiff survived motion for summary judgment); *Hester v. Cottrell Contracting Corp.*, 2001 WL 1764200 (E.D.N.C. Apr. 27, 2001) (defendant's financial condition discoverable only when plaintiff presents evidence of possible entitlement to punitive damages and plaintiff survives a motion to dismiss). However, most courts hold that surviving a motion to dismiss alone is not enough to show a viable claim for punitive damages. *See, e.g., Robinson*, 2013 WL 1704839 ("Plaintiff would certainly satisfy her burden by surviving a motion for summary judgement, although that would occur relatively late in litigation. One alternative is for Plaintiff to file a renewed motion to compel discovery that includes sufficient supporting evidence (*i.e.*, affidavits, documentary evidence) to demonstrate a viable claim for punitive damages" however, "merely surviving a motion to dismiss without such evidence is insufficient").

Here, the fact that Defendants' Motion for Judgment on the Pleadings is pending is not controlling on the issue of whether financial information is discoverable because that motion does not seek dismissal of any of the punitive damage claims. However, the Court agrees that Plaintiffs have not met their burden of producing evidence to establish a *prima facie* case in support of their punitive damage claims. Regarding the tort of outrage, Plaintiffs merely contend in their motion that

they "have asserted sufficient facts in their Complaint to establish a *prima facie* claim for punitive damages." However, as noted above, this is simply not enough to establish a viable punitive damages claim for the purposes of discovering financial information. Plaintiffs must come forward with some evidence to support their factual allegations in order to carry their burden. They have not done so here. Similarly, Plaintiffs have not provided sufficient support of their statutory deliberate intent claims. Plaintiffs do provide some documentary evidence, which they contend supports the allegations in their complaint that "Defendants engaged in deliberate, willful and intentional wrongdoing" and give rise to punitive damages under West Virginia's deliberate intent statute, W.Va. Code 23-4-2. However, as Defendants point out, under this statute, punitive damages are only available under subpart (i) of 23-4-2, which "requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) conduct with produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct." W.Va.Code 23-4-2(d)(2)(i), (iii). Punitive damages are not available under subpart (ii) of the statute, which requires only a showing that an unsafe condition existed of which the employer actually knew, that the hazard was a violation of the safety rules, that the employer exposed the plaintiff to the hazard, and that serious injury resulted. W.Va.Code 23-4-2(d)(2)(ii). Plaintiffs have not presented any evidence to support liability under subsection (i), *i.e.*, that Defendants deliberately intended to produce the injuries. Accordingly, Plaintiffs have not met their burden of showing a viable claim for punitive damages, and the discovery of financial information for that purpose is premature at this time.

However, the Court does not agree that these same principles apply to the discovery of financial information regarding Plaintiffs' alter-ego claims. "[T]he courts have held that when a

party seeks discovery about the relationships between individuals and a corporation, relevance is broadly and liberally construed. The issue is not whether [the party] may ultimately prevail on the piercing the corporate veil theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Abu–Nassar v. Elders Futures Inc.*, 1991 WL 45062 (S.D.N.Y.1991) (internal citations omitted); *see also In re Don's Making Money, LLP*, 2008 WL 509531 (Bankr. D. Ariz. Feb. 19, 2008) (collecting cases). Discovery of information for purposes of establishing the existence of facts sufficient to support an alter-ego theory is especially appropriate when much of the relevant information is in the control of the other party. *See, e.g, Minelli Constr. Co. v. United Derrickmen & Riggers Ass'n, Local 197*, 1990 WL 180550, *5 (S.D.N.Y. November 14, 1990).

Here, Defendants argue that "when [Plaintiffs] allegations are reviewed, it is clear that insufficient evidence is provided to support their claim, let alone allow them to discover financial information." However, the issue is not whether Plaintiffs provided sufficient evidence; it is whether the allegations in their Complaint are sufficiently pled. Defendants' Motion for Judgment on the Pleadings currently pending before the District Court seeks dismissal of the alter-ego claims. Should Plaintiffs survive that dispositive motion, they would be entitled to conduct discovery into those claims. Accordingly, as directed at the hearing, Defendants will be required to file certain financial information under seal pending resolution of the pending motion for judgment on the pleadings.

Based on the foregoing, Defendants shall file the following information under seal: (1) tax returns for all defendants for 2011, 2012, and 2013 (when they are completed); and (2) income statements and balance sheets for M&M Transportation and Miller & Sons Auto and Truck Repair for 2011, 2012, and 2013 (when they are completed). The information will stay under seal until such

time as the trial court rules that Plaintiffs can go forward with their alter-ego claims. If the trial court dismisses those claims, the information will remain under seal until Plaintiffs survive a motion for summary judgment on the punitive damage claims or until the time for filing such a motion expires.

*B. Defendants' Motion to Compel Plaintiff to Submit to Rule 35 Examinations*

Defendants seek an order compelling Plaintiff Christopher Tyler Long ("Long") to submit to two examinations under Federal Rule of Civil Procedure 35: (1) a medical examination conducted by Dr. John Talbott; and (2) a vocational examination conducted by Kathleen R. Deken. Defendants assert that Long's physical condition and his future employability are both at issue such that good cause exists to compel the examinations under Rule 35. Plaintiffs oppose the examinations because they contend that Defendants have not shown that good cause for the examinations exists. Additionally, they oppose the examination by Dr. Talbott because Defendants seek to hold the examination in Pittsburgh, Pennsylvania, which is 240 miles from Long's home and outside this judicial district. They also contend that the proposed vocational assessment by Ms. Deken amounts to a deposition, which is not provided for under Rule 35. Finally, Plaintiffs assert that "so-called vocational interviews are not within the ambit of [Rule 35], even when the Plaintiff's employability is at issue."[6]

Pursuant to Rule 35, when a party's mental or physical condition is in controversy, the court may order that party to submit to a physical or mental examination by a suitably licensed or certified examiner. Fed.R.Civ.Pro. 35(a)(1). The order may be made only on motion and for good cause. Fed.R.Civ.Pro. 35(a)(2)(A). "The law is well-settled that the 'in controversy' and 'good cause'

---

[6] Plaintiffs also state in their response brief that the date by which examinations were to be completed has passed. However, Judge Groh granted Defendants' Motion to Modify Scheduling Order on January 21, 2014. As a result of that Order, the examination deadline is now January 30, 2014. Thus, Plaintiffs' argument is moot.

requirements of the Rule are not mere formalities; rather, they must be met with 'an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Pauley v. U.S.*, 2013 WL 6195730 (S.D.W.V. Nov. 27, 2013) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)). However, in some situations, the pleadings alone are enough to meet these requirements. *Id*. at 119. In a negligence action where the plaintiff asserts a mental or physical injury, "that mental or physical injury [is] clearly in controversy and [provides] the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*.

Here, Long's medical condition and future employability are clearly in controversy because Plaintiffs have alleged that Long "suffered serious, permanent and disabling injuries" which are "permanent in nature including, among other things, the loss of sight, the loss of full cognitive function, nerve damage, scarring and disfigurement of the plaintiff's face and other parts of his body." Defendants have denied these allegations. Thus, the nature, extent, cause, and permanency of Long's injuries are squarely at issue such that good cause for the examinations exists. Additionally, Plaintiffs' contention that Defendants must show that they cannot get the desired information from existing medical records lacks merit. *See Pauley v. U.S.*, 2013 WL 6195730 (collecting cases). Plaintiffs' objection that Defendants must show good cause to hold the examination in Pittsburgh is also overruled. While there is case law to support such a proposition, Plaintiffs did not object to the examination being held in Pittsburgh initially, as evidenced by correspondence between the parties' counsel. Defendants aver that they will pay for all expenses, and requiring them to change the location on such short notice would result in further delay.

The Court also finds that Defendants are entitled to conduct a vocational examination.

Plaintiffs' reliance on this Court's holding in *Twigg v. Pilgram's Pride Corp.*, 2006 WL 2100322 (N.D.W.V. July 26, 2006), for the proposition that vocation interviews are not allowed under Rule 35 is misplaced. In *Twigg*, this Court did not hold vocational examinations are *per se* outside the scope of Rule 35. The undersigned found in *Twigg* that the plaintiff's mental condition was not in controversy because "Plaintiff Twigg neither seeks nor alleges she has suffered mental or physical damages." *Id.* at *2. The only reason the defendant in *Twigg* requested the vocational assessment was to support its theory that the plaintiff did not mitigate damages in requesting back-pay. Here, in contrast, Plaintiffs have put Long's future employability squarely at issue by alleging that he "suffered...a loss of earning capacity and reasonably believes he will suffer such loses in the future."

Accordingly, Defendants' Motion to Compel Plaintiff to Submit to Rule 35 Examinations is **GRANTED**. As directed at the hearing, Dr. Long's examination will take place on January 23, 2014, in Pittsburgh, Pennsylvania. Defendants will pay Plaintiffs' round-trip mileage, at the government rate, as well as reasonable expenses for meals and accommodations. Counsel for all parties are directed to confer as to the exact time and place for the examination to occur and arrangements for travel. Ms. Deken's examination will take place on January 30, 2014, at 9:30 a.m., at Plaintiffs' place of residence.

### III. CONCLUSION

Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART** because information about Defendants' financial status is only relevant to Plaintiffs' punitive damage claims once it is clear that those claims are viable. However, if Plaintiffs' alter-ego claims survive the pending dispositive motion, certain financial information will be discoverable. In order to avoid delay if and when Plaintiffs' right to discovery of financial information becomes ripe, Defendants are

**ORDERED** to file, under seal, the information directed by this Order, within fourteen (14) days of the date of this Order.[7] Defendants' Motion to Compel Plaintiff to Submit to Rule 35 Examinations is **GRANTED**. Plaintiff Christopher Tyler Long shall submit to a physical examination by Dr. John Talbott on January 23, 2014, in Pittsburgh, PA, with all reasonable travel expenses paid by Defendants. Plaintiff Christopher Tyler Long shall also submit to a vocational examination on January 30, 2014, at Plaintiffs' residence.

Filing of objections does not stay this Order.

Any party may, within fourteen [14] days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED**.

DATED: January 22, 2014  /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[7] Because the 2013 tax year just ended, if the requested information is not yet available for 2013, Defendants are directed to file that information within fourteen (14) days of its completion.